Good morning, Your Honors. May it please the Court. My name is Jason Hipp, and I represent the Plaintiff Appellant Travis Williams, who was a pretrial detainee at the Racine County Jail in Wisconsin. Mr. Williams is asking to reverse the granted summary judgment against him and remand for discovery and trial. Mr. Williams is raising two separate issues on appeal. The first issue pertains to the unconstitutional failure to address his undisputably serious medical needs as a pretrial detainee in solitary confinement from June through August 2014. The second and separate issue pertains to the decision to dismiss his separate due process claims as unexhausted, depriving Williams of the ability to challenge the unconstitutional conduct that required him to spend time in solitary confinement in the first place. On the first issue, it was objectively unreasonable to deprive Mr. Williams, a pretrial detainee suffering chronic and severe pain, of the modest remedy of a mattress for 12 hours per day for three consecutive months that he spent in solitary confinement in that jail. There is no dispute that Williams' arthritis qualified as a serious medical need when he entered the jail. There is no dispute that the jail initially accommodated that medical need by providing him with a mattress when he was in solitary confinement in an earlier portion of his time at the jail. It was only when he was then charged with additional rules violations in June 2014, and when his three-month term in solitary confinement began, around that time that he was disciplined, that that accommodation was taken away. For 12 hours per day, every day, for three straight months, the jail made him rest on a concrete floor, causing him extreme pain and numbness. By the time he left the jail, Mr. Williams required a wheelchair. This is not a case where the plaintiff is second-guessing a medical judgment of a physician below. Instead, the district court record lacks evidence that there was ever any medical judgment about the core issue on appeal, which is whether Williams' medical needs required him to have a mattress for those 12 daytime hours when he was in solitary confinement. The defendant's briefs do not dispute the fact that there is this evidentiary void. Instead, they argue as a matter of law that the physician was entitled to defer to the viewpoints or desires of prison officials. And as we've laid out in our briefs, we don't think that's the correct statement of the application of the law here. On the second issue, Williams' two due process claims against the correctional officers who cited him for rules violations should have gone to a jury. The court erroneously found that Williams did not exhaust, but it ignored straightforward evidence in the record that he, in fact, did comply with the two-step process laid out in the jail rulebook. The finding decision imposing discipline on Mr. Williams was not issued until June 8th, and Williams appealed to the correct official June 9th, within 24 hours, as required by the jail rulebook. Defendants do not contest that the discipline was, in fact, imposed on June 8th, so the district court's conclusion that the punishment was imposed on June 5th is therefore erroneous. For the second step, which was never raised as an issue by the defendants in the district court below, Williams did file a subsequent appeal to the jail captain in which he stated that my due process has been violated twice now for a total of an unjust 35 days' segregation time. It was timely, and it was sufficient to put the jail on notice of the nature of the wrong for which he sought a remedy. Your Honor, I'll return now to the first issue, and I want to elaborate a little bit further on why this case is different from some other deliberate indifference cases that you have considered before. First is that there's no dispute here that Williams had a serious medical need. He had chronic and severe pain from arthritis. There's no dispute in that in the record or in the briefs on appeal. The other issue is there is just the absence of any sort of evidence in the record about Dr. Ortiz's judgment about this single issue. He submitted a lengthy affidavit about his medical determinations in this case, and he opined on the issue of whether Mr. Williams needed a second mattress at night, but he did not opine on the issue that we are focusing on on appeal, which is this single mattress during the day. Is there any evidence to support a need for a second mattress at any time, either during the day or at night? There is, Your Honor, yes, because the jail initially – there's a medical note from December 2013 in which medical staff determined because of his chronic health condition, he should have a mattress when he was in solitary confinement, and that is separate appendix, page 101. It was rescinded the next day? It didn't describe the medical necessity. He just – an unknown staff member granted the request for a 24-hour mattress. Your Honor – It didn't state a reason, and then it was rescinded the next day, as I understand the record. No, Your Honor. There's substantial evidence that Mr. Williams was given that accommodation for numerous months leading up to the relevant June time period. It's undisputed that that note was from medical staff, so it was based on some sort of medical determination, and also that it does state because of his chronic health condition, so there was a medical justification or explanation for that decision. And so the other piece of evidence is separate appendix, page 8, which is a note from Lieutenant Friend, who's another defendant in this case, a correctional officer, and that was a grievance response where Mr. Williams was complaining of the absence of a second mattress, and Lieutenant Friend, in responding to that grievance, noted that medical staff had given him a second mattress because of swelling. That is, again, separate appendix at 8. This was April 28, 2014, just a few months before the relevant time period here. And again, just to give you a sense of some of the disputed facts at issue here, that note was from April 2014. Dr. Ortiz's affidavit testified that by February 2014, he had determined that Williams did not need a second mattress. But here we have a note from Lieutenant Friend saying that medical staff had given him an extra mattress because of swelling. For all these disputed facts that are in the record, we ask for reversal of summary judgment and a chance to go to trial. Thank you. Thank you, Mr. Hill. Mr. Sosnay? Good morning, Your Honors. Jacob Sosnay on behalf of Austin Isverding, Robert Hernandez, and Bradley Friend. May it please the Court. First, I'm going to address the exhaustion claim. The facts in this case are very clear in terms of what conduct was at issue versus what conduct was appealed and when. On June 3rd and June 5th, Travis Williams engaged in conduct that violated various jail rules that resulted in the recommendation of approximately 20 days of disciplinary segregation. Up until this appeal, Travis Williams and everyone accepted that on June 5th, Sergeant Noonan came to his cell to try to conduct a hearing or to at least set up a hearing, at which time Mr. Williams was uncooperative. Because of that, it was clear to the Court, as well as all of the parties, that the June 9th appeal was untimely under the first layer of the Racine County Jail disciplinary appeal process. It was not until this appeal that counsel, after appointment for Mr. Williams, began to argue that on June 8th there was discipline imposed against Travis Williams and that, therefore, June 9th, that appeal was timely under the first layer of the process. For that reason, on appeal, we accepted that because Mr. Williams otherwise failed to exhaust the second layer of the disciplinary process. That is, on June 16th, Bradley Friend denied the June 9th appeal as untimely for the same reasons that Judge Griesbach did. It was not until June 18th that another appeal was submitted directly to Douglas Wearing, the jail captain. They argued, the plaintiff argues on appeal, that that June 18th appeal to Doug Wearing satisfies the second step of the process because it was timely, one, and two, it references 35 days of segregation. Well, that is wrong for two reasons. The first reason is it wasn't timely. Brad Friend's June 16th denial of the appeal was 48 hours before Travis Williams submitted that to Captain Wearing. And second, the June 18th appeal references a June 15th hearing that arose from conduct violating rules on June 8th and June 12th where nine days of segregation were specifically referenced. Mr. Williams was not appealing anything that Lieutenant Friend had done on June 16th. He was upset because on June 15th, nine additional days of segregation had been imposed against him. So in this case, none of the June 3rd or June 5th segregation imposed against him was properly appealed through the process. For that reason, the claims as a prerequisite, the PLRA requires exhaustion of remedies as a prerequisite to suit Mr. Williams is barred and was correctly barred by Judge Griesbach in the trial court. And that's because the second layer of appeal was not exhausted, the appeal to Captain Wearing? No, there was, so Judge Griesbach treated these a little differently because it was, they refocused this on appeal. There was, Judge Griesbach treated the June, I believe he treated the June 9th appeal as having dealt with the June 3rd conduct and the June 18th appeal as having dealt with the June 5th conduct. That was very unclear based on the deposition testimony and everything else. Right, I thought you've given that up. I don't know that I've given it up, but for the purposes of appeal, since they refocused it, our argument is that even if what they're saying is true, yes, because he didn't satisfy the second layer. Right, that's what I was driving at. The only contested point is whether, at this point of the litigation, is whether he satisfied that second layer and the undisputed evidence is that no, he did not. That is correct. Okay. Turning to the, unless there are any other questions on the exhaustion claim, I'd like to turn now to the claim with respect to Brad Friend only. He was at the time a lieutenant in charge of jail administration and would have had the authority to set aside what was a general disciplinary condition for all inmates in disciplinary segregation, which is during the day between the hours of 8 a.m. and 8 p.m., no inmate in disciplinary segregation is entitled to a mattress. There is ample evidence in the record that Mr. Williams wrote many medical requests asking for a mattress during that period of time, that he wrote directly to medical, that he wrote directly to Lieutenant Friend, that he wrote directly to Captain Wearing, that he wrote directly to other COs and sergeants concerning the absence of a mattress during his period of time in segregation. It is clear that in all of those requests for that accommodation, that Lieutenant Friend went to and discussed with nursing staff whether or not, and other medical professionals whether or not a mattress was necessary, and at no point in time did an order come in during the relevant time period. There is no dispute that prior to this time period that this was something that was necessary. Under McGee v. Adams case, he is entitled to rely on the judgment of medical professionals to impose a neutral disciplinary policy. In McGee v. Adams, it was the condition of having leg shackles when the inmate had pretty severe edema. He consulted with, the warden in that case consulted with medical professionals, and medical professionals never came to the conclusion that it was a necessity. That's essentially the same as in our case here. For those reasons, I would ask that the court affirm Judge Griesbach's decision and his grant of summary judgment in the defendant's favor, dismissing the claims. Thank you. Good morning, your honors. Mike Shagg on behalf of Dr. Ortiz and Nurse Olstenski. May it please the court. I'd like to focus this on the most germane issues as it relates to the medical judgment at hand. We know there was a change in the standard as a result of the Kingsley and Miranda decisions, and your honors, we pointed that out to the court in this briefing. Although we do believe that the medical appellees in this case still prevail under that standard because there's some very significant features of the law that really have not changed. In fact, when this court issued Miranda, it was very careful to establish that not every claim of inadequate treatment states a constitutional violation. So that remains undisturbed. The Constitution is not a medical code, and it doesn't mandate any specific type of treatment. It's not a place to adjudicate malpractice. This doctor did exercise judgment. One thing that's important to note about the complaints by Mr. Williams is that he does variably through the course of time complain about a single or a double mattress as time wears on depending on where he's at. But the doctor talks in terms of the extra mattress, so the mattress is extra wherever he's at, whether it's in solitary or whether it's not in solitary. But I do think it would be helpful to run down in a little bit of detail with the time we have the judgments that were made to show that they in fact meet the reasonable standard here. First of all, the record does show that the doctor had notes and slips available to him when they were conveyed by others, including the nurses involved in this case. The doctor performed multiple medical exams between February and July of 2014 and engaged in a dynamic treatment practice. He didn't sit on one particular type of treatment but rather went through different varieties of things. Mr. Williams was on ibuprofen. At one point they tried some Tylenol too. He was given an Ace Wrap, and in fact he had received some instructions to try and exercise a little bit as opposed to perhaps sit on a mattress all day. That might actually help with the condition. The doctor offered in his affidavit that this type of treatment for this type of problem is in fact common. It's the common approach, whether it's in a prison or elsewhere. If we look at the record, we see that Dr. Ortiz first examined Mr. Williams in February of 2014, and that's when he issued his order for no mattress, after observing no swelling and no calf tenderness upon the complaints of Mr. Williams. Then on June 3rd he examines him again. Mr. Williams had said he was experiencing some walking pain, but there was no pain upon palpation of the heel and no trouble flexing or extending the feet. But Dr. Ortiz did order an x-ray, and in fact that x-ray on June 5th revealed modest-sized bone spurs. Now, Mr. Williams enters solitary confinement on June 8th. On June 12th, Dr. Ortiz examines him again, and in this particular instance he also said no mattress. So he did examine him after entry into solitary. He did opine, give an order on the issue of no mattress. In fact, he ordered the continuance of the medications at that time that Mr. Williams was on. July 1st, Ortiz examined him again. He continued ibuprofen upon the complaint of left arm and shin pain. July 8th was the point where they tried to add some Tylenol in the mix to try and work on the problem a little bit more. There was a nurse practitioner exam on July 9th. Mr. Williams was alleging chronic pain. There was no observation of swelling, bruising, tenderness, and the like. July 10th, Dr. Ortiz examined him again upon the complaint of leg pain and swelling. There actually was no evidence of swelling despite the complaint of swelling, and it was observed that Mr. Williams was able to stand and walk and extend his legs against his knees. This is the point at which the ACE bandage was provided. So the cases on which the appellant relies often deal with observable conditions, and the observable conditions in this case weren't necessarily that he had no medical condition at all, but he had a medical condition that was equal to the treatment that was provided, and under the standard applicable in this case, the conduct was reasonable on behalf of Dr. Ortiz. I see I'm out of time, Your Honors. Thank you very much. Thank you, Cishan. Mr. Hitter. Thank you, Your Honors. I want to touch very briefly first on the medical issue. On the issue of Dr. Ortiz's June 12th exam, counsel just represented that Dr. Ortiz on that day said no mattress. If you look at Separate Appendix 129, that is a record of the medical exam by Dr. Ortiz. It shows a request for a mattress, but there's no evidence one way or another how Dr. Ortiz came out. Stepping out kind of the bigger picture here, in terms of the relevant time period, there was no evidence of that medical judgment, and there was evidence from Mr. Williams that was not disputed by Dr. Ortiz that the reason in the relevant time period Dr. Ortiz did not issue that mattress was because he knew that it would be overruled by jail staff or a jail policy. There were also allegations about whether a nurse would interfere in the application of the mattress decision. Dr. Ortiz specifically addressed the issue of whether a nurse would overrule the mattress order in his affidavit, and he specifically addressed, again, the issue of the second mattress, but he did not address whether Mr. Williams was entitled to or had a medical need for that single mattress when he was in solitary confinement. Going back to the exhaustion issue and Step 2 that Judge Sykes, you asked about, there are two reasons here that, at minimum, the district court should have held a factual hearing to decide some of these disputed facts about exhaustion. There was a June 16th decision from Lieutenant Friend and a June 18th appeal from Mr. Williams. The record of when that decision from Lieutenant Friend was actually delivered to Mr. Williams is blank in this case. The June 18th appeal doesn't pertain to anything that's at issue right now. It had to do with other things? No, Your Honor. I believe the last sentence, which references 35 days unjust segregation time, that was sufficient to put the jail on notice that he was challenging. That included 20 days of segregation time at issue in this appeal. That is our hope for Mr. Williams' compliance with Step 2. His request for relief, he says he wants these additional nine days expunged from the computer, and those have to do with incidents on June 8th and June 12th. It doesn't have anything to do with what's at issue here. Yes, Your Honor. That first portion of the grievance response does address a later punishment that's not at issue here. But again, that last sentence specifically refers to time that he was sentenced to solitary confinement. That is part of the relevant appeal. If you have no further questions. All right. Thank you. Thanks for all counsel. Mr. Hipp, you have the additional thanks to the court for accepting this appointment. Thank you.